UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAUL DAVID DONAHOE,

    Petitioner,

v.                                           Case No. 8:07-cv-305-T-23MAP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Donahoe petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for second degree murder, for which conviction Donahoe serves forty years. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 11) The respondent admits the petition's timeliness. (Response at 3 Doc. 11)

## **FACTS**[1]

In the summer of 2001 Donahoe and his wife separated. Chris Gibbs (the victim) and his wife also separated. The two families were friends. By the end of the summer the victim and Donahoe's wife commenced an affair. Donahoe telephoned the victim and asked him to stop by Donahoe's home so they could talk. According to a companion with the victim, Donahoe commenced firing as soon as Gibbs opened the front door.

---

[1] This summary of the facts derives from Donahoe's brief on direct appeal. (Respondent's Exhibit 2)

Additionally, in summarily denying Donahoe's first motion for post-conviction relief (Respondent's Exhibit 10), the circuit court summarized Donahoe's testimony as follows:

> [Donahoe] was acquainted with the victim, Chris Gibbs, through work. He became aware that Gibbs had a problem with his temper and described violent incidents he had seen or heard about. Defendant stated that Gibbs was "somebody I would never want to tangle with." He became aware of his wife's relationship with Gibbs, but denied threatening either one of them. On the day of the shooting Defendant called Gibbs and asked to talk. Again, he denied threatening Gibbs. Gibbs came over to Defendant's home. Gibbs stated, "It's over, she's mine," and punched Defendant in the mouth. A fight ensured, with a third party (who had arrived with Gibbs) striking Defendant with "something hard." Defendant broke free, went in his home, and retrieved a gun to defend himself. He was "dazed and confused" because he had been kicked in the head, though he recalled firing the gun. Based on this testimony the jury could conclude that the killing of Gibbs was neither premeditated nor justifiable, but a "crime of passion" justifying reduction of the charge to second degree murder.

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002).  See Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").  Moreover, the phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

In per curiam decisions without a written opinion, the state appellate court affirmed both Donahoe's conviction and sentence on direct appeal (Respondent's Exhibit 4) and the denial of both of his subsequent Rule 3.850 motions to vacate. (Respondent's Exhibit 14 and 23)  The state appellate court's per curiam affirmances

- 3 -

warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Donahoe bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the finding of fact in the state court's rejection of Donahoe's post-conviction claims. (Respondent's Exhibits 10 and 21) However, because the state appellate court affirmed Donahoe's convictions and sentences without a written opinion on direct appeal, no finding of fact exists to which this court can defer regarding Donahoe's first two grounds for relief.

### **DIRECT APPEAL CLAIMS**

Donahoe must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The focus is on state court's application of controlling precedent, not whether the state court failed to cite the appropriate precedent. "[A] state court need not even be aware of our precedents, 'so long as

neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003), quoting Early v. Packer, 537 U.S. 3, 8 (2002).

Ground One

Donahoe asserts the deprivation of his right to the assistance of counsel when he was precluded from conferring with his counsel during two overnight recesses. The court recessed for the day at 4:00 p.m., on Monday, April 21, 2003, after jury selection concluded. Security personnel failed to return Donahoe to the county jail until after 9:00 p.m. and failed to provide him an evening meal. On Tuesday morning (the first day of trial testimony) defense counsel (after conferring with Donahoe) advised the courtroom bailiff about the problem. The proceedings concluded at about 5:00 p.m. and defense counsel went to the county jail at about 7:30 p.m. to confer with Donahoe. Jail personnel advised counsel that Donahoe was still in the holding facility. Counsel waited until 8:15 p.m. but was never able to confer with Donahoe, who returned to the jail about forty-five minutes later. A guard immediately allowed Donahoe to use the telephone. Donahoe called his father but not counsel. (Respondent's Exhibit 1, vol. II at 80-84)

Before trial resumed on Wednesday morning, defense counsel advised the judge about the problem. The judge accepted counsel's representations, Donahoe's testimony, and comments from both the courtroom bailiff and a lieutenant from the Polk County Sheriff's Department ("PCSO"). (Respondent's Exhibit 1, vol. II at 80-87) The judge determined that, in Donahoe's opinion, no surprises occurred during the first day of trial that Donahoe was precluded from discussing with counsel.

- 5 -

>THE COURT: Have there been any surprises so far as far as the testimony and information that you have been able to exchange with your attorney?
>
>[DONAHOE]: Well, I do believe that there are things, you know, that we need to — we need to speak about on a daily basis now.
>
>THE COURT: Absolutely. I agree with you. I just want to know if there's been anything new that's come up other than day-to-day preparation.
>
>[DONAHOE]: No, I don't believe so, sir.
>
>[DEFENSE COUNSEL]: That you are aware of?
>
>[DONAHOE]: Well, that I'm aware of, yes.
>
>THE COURT: All right. I mean from what you observed in here.
>
>[DONAHOE]: Right.

(Respondent's Exhibit 1, vol. II at 85-86) The trial judge denied defense counsel's request for both dismissal of the charges and pretrial release, but granted the request for unlimited access to Donahoe. The judge ordered a continuance and the courtroom cleared so that counsel and Donahoe could confer before trial resumed at noon.[2] The judge also ordered the sheriff's department to show cause why it should not be held in contempt. (Respondent's Exhibit 1 at 91) Both a captain and a major with the PCSO appeared to explain the mishap. The judge prefaced their testimony with the following comments:

>Gentlemen, it has come to my attention that in effect Mr. Donahoe has been denied access to counsel. That's my determination. To give you some summary, on Monday afternoon he was taken across the street to book-in area, was detained there until approximately 9:00 in the evening.

---

[2] Defense counsel requested a day's continuance. The judge postponed trial until noon. Defense counsel objected to the short delay, stating "I don't believe that that is sufficient time for me to conduct the activities that I need to conduct with Mr. Donahoe." (Respondent's Exhibit 1, vol. II at 92)

- 6 -

> You're welcome to contradict me if you feel that is incorrect. During that process, he was denied access to counsel, nobody was allowed to talk to him, he was not fed. The sheriff's department was made aware of the circumstances. The identical thing happened yesterday. Again, Mr. Donahoe was denied access to counsel, he was fed later.
>
> That is an absolute denial of due process. This is a capital case, first degree murder case. These are unbelievably serious issues. What's going on?

(Respondent's Exhibit 1, vol. II at 96-97) And following their testimony the judge stated, "I will leave it up to you to make further inquiry [to] find out what the hell is going on here. But let me tell you something. This guy is going to have unlimited access at any time he wants to to his client, at any time. I don't give a damn if it's 2:00 in the morning, he's going to have access to his client."[3] (Respondent's Exhibit 1, vol. II at 109)

Donahoe was unable to confer with his counsel the evening following jury selection (Monday) and the evening following the first day of testimony (Tuesday). But the PCSO's failure to timely return Donahoe to jail on Monday evening is inconsequential because defense counsel admitted that he never tried to contact Donahoe that evening and was unaware of Donahoe's situation until the following morning. (Respondent's Exhibit 1, vol. II at 107) Only the Tuesday evening incident is consequential.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." And this provision of the Bill of Rights applies to the states through the Due Process Clause of the

---

[3] A week later the Polk County Sheriff's Department filed a written response to the oral show cause order and explained exigent circumstances occurred both evenings that caused the delay in returning Donahoe to the jail. (Respondent's Exhibit 1, vol. I at 123-33)

- 7 -

Fourteenth Amendment. Grosjean v. American Press Co., 297 U.S. 233, 243-44 (1936). The trial is a critical stage at which the right to counsel attaches. United States v. Cronic, 466 U.S. 648, 658 (1984) ("[A] trial is unfair if the accused is denied counsel at a critical stage of his trial."). This right attaches to an overnight recess. Geders v. United States, 425 U.S. 80 (1976) (A trial court's order preventing a defendant from consulting with his counsel during an overnight recess deprived the defendant of his Sixth Amendment right to the assistance of counsel.).

Donahoe correctly argues that the Strickland v. Washington, 466 U.S. 668 (1984), test is inapplicable because "Strickland involved a claim of *ineffective* assistance of counsel [whereas] here we are concerned with a claim of *denial* of assistance of counsel." Crutchfield v. Wainwright, 803 F.2d 1103, 1108 (11th Cir. 1986), cert. denied sub nom Crutchfield v. Dugger, 483 U.S. 1008 (1987) (emphasis original). Accord Perry v. Leeke, 488 U.S. 272, 280 (1989) ("[A]ctual or constructive denial of the assistance of counsel altogether is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective.") (citation omitted). If a judge orders counsel to not confer with the defendant and that affirmative denial of counsel is at a critical stage, no showing of prejudice is required. Cronic, 466 U.S. at 659, n.25. Nevertheless, Donahoe is not entitled to relief.

Defense counsel attempted to consult with Donahoe following the first day of testimony, but his attempt was unintentionally thwarted by the PCSO. As a consequence, defense counsel was unable to consult with Donahoe during the overnight recess.

> It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.

Geders, 425 U.S. at 88. As soon a defense counsel revealed the problem, the trial judge acted immediately to preserve Donahoe's Sixth Amendment right to counsel by postponing the morning start of trial and arranging for Donahoe and his counsel to consult before trial resumed. Because the trial judge ensured that Donahoe and counsel had a morning consultation instead of an evening consultation, Donahoe's right to consult his attorney was simply delayed, not denied. The pertinent cases Donahoe cites are distinguishable because (1) each involved an aff

irmative denial of counsel by the judge and (2) Donahoe was not required to continue with his trial without first consulting with counsel. The state court's rejection of this claim was not unreasonable.

## Ground Two

Donahoe alleges that, by failing to disclose the complete criminal history of the only eyewitness, the state violated his rights under Brady v. Maryland, 373 U.S. 83, 87 (1963), which states that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Donahoe

contends that the criminal history information was necessary to impeach the witness.

The Brady rule includes impeachment evidence.

> Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. See *Giglio v. United States,* 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972). Such evidence is "evidence favorable to an accused," *Brady,* 373 U.S., at 87, 83 S. Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend").

United States v. Bagley, 473 U.S. 667, 676 (1985).

Donahoe must establish three components to prove a Brady violation. "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Green, 527 U.S. 263, 281-82 (1999). Donahoe shows no prejudice.

During direct examination the victim's companion, Doug Bushnell, revealed his criminal history from Massachusetts and an outstanding warrant from Missouri. (Respondent's Exhibit 1, vol. IV at 499-505) During a recess and just before direct examination concluded, defense counsel argued a Brady violation because the Missouri criminal record was not disclosed before trial and Bushnell failed to disclose it during his deposition. The judge ruled, "I don't find that to be prejudicial." (Respondent's Exhibit 1, vol. V at 548-49) During cross-examination the witness claimed that he had disclosed the Missouri matter in his deposition. Defense counsel impeached the witness with the

- 10 -

deposition showing the non-disclosure. (Respondent's Exhibit 1, vol. V at 551-54) Defense counsel renewed his Brady objection after the witness finished testifying, and again the judge ruled that "I don't think it's prejudicial."[4] (Respondent's Exhibit 1, vol. V at 578-83)

The question is whether the state court's ruling is reasonable. See Brown v. Head, 272 F.3d at 1313 ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."). Donahoe cannot show that he was prejudiced by the non-disclosure. The impeaching information (the outstanding warrant from Missouri) was fully disclosed to the jury, and the witness was further impeached with his deposition, during which he failed to disclose the Missouri criminal matters. This is not a situation where neither counsel nor the jury learned about the impeaching information until after trial. The jury had the impeaching information for their consideration in assessing the witness's credibility. The state court's ruling of "no prejudice" is not unreasonable. Consequently, ground two lacks merit.

## **POST-CONVICTION CLAIMS**

Donahoe's first Rule 3.850 motion to vacate, which asserted three claims of ineffective assistance of counsel, was litigated pro se. (Respondent's Exhibit 9) The post-conviction court summarily denied the motion without a response from the state and the appellate court affirmed in a per curiam decision without a written opinion. (Respondent's Exhibits 10 and 14, respectively) Retained counsel filed Donahoe's second motion to vacate, which asserted four claims of ineffective assistance of counsel.

---

[4] The judge complimented defense counsel for a fine cross-examination and identified areas in which counsel highlighted the witness's credibility problems.

(Respondent's Exhibit 17)  Donahoe presents those four claims in his federal petition as grounds three through six.  The state argued that Rule 3.850(f) precludes Donahoe from pursuing another motion to vacate.  (Respondent's Exhibit 19)  The post-conviction court adopted the state's argument and rejected the motion to vacate as procedurally barred and the appellate court affirmed in a per curiam decision without a written opinion. (Respondent's Exhibits 21 and 23, respectively)  Consequently, Donahoe procedurally defaulted the four claims.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."), Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (A state appellate "court's per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts.").

Because of this procedural default, review is foreclosed unless Donahoe can establish either (1) "cause for the default and prejudice attributable thereto" or (2) "that failure to consider [his defaulted] claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989).  See Murray v. Carrier, 477 U.S. 478 (1986).

To demonstrate "cause" for his procedural default, Donahoe must justify his failure to comply with Florida's procedural rules.  In general, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."  Murray v. Carrier, 477 U.S. at 488.  See Marek v. Singletary, 62 F.3d

- 12 -

1295, 1302 (11th Cir. 1995).  Even if he shows cause for his procedural default, Donahoe must show prejudice arising from the alleged constitutional error.  A petitioner must show that he suffered actual prejudice, "not merely that the errors of the trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis original).  Accord Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991).  In essence, to show actual prejudice, Donahoe must demonstrate that the alleged errors so infected the trial that his resulting conviction violates due process.  Donahoe fails to meet his burden.

As an alternative to showing "cause and prejudice," Donahoe must show that dismissal of his procedurally defaulted grounds will result in a "fundamental miscarriage of justice," an especial difficulty because Donahoe must demonstrate "actual innocence" of the crime of conviction.  See Smith v. Murray, 477 U.S. 527, 537 (1986) (citing Murray v. Carrier, 477 U.S. at 496).  See also Engle v. Isacc, 456 U.S. 107, 134-35 (1982), and Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause) (petitioner must show "as a factual matter that he did not commit the crime of conviction.").  Additionally, to meet the "fundamental miscarriage of justice" exception, Donahoe must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).

Donahoe meets neither the "cause and prejudice" nor the "fundamental miscarriage of justice" exception to procedural default.  Consequently, grounds three through six are procedurally barred from review on the merits.

Accordingly, Donahoe's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Donahoe and close this case.

ORDERED in Tampa, Florida, on June 2, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE